**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan                                                                                         609-989-0478
United States Bankruptcy Judge                                                                          609-989-2259 Fax

May 24, 2012

Richard D. Trenk, Esq.
Jennifer D. Talley, Esq.
Trenk, DiPasquale, Della Fera & Sodono, P.C.
347 Mount Pleasant Avenue
West Orange, New Jersey 07052
Special Counsel to Barry Frost, Chapter 7 Trustee

John F. Bracaglia, Jr., Esq.
Cohn, Bracaglia & Gropper
275 E. Main Street
P.O. Box 1094
Somerville, New Jersey 08876
Attorney for Debtor, Nicholas Braco

        Re: In re Nicholas and Marcy Braco (Chapter 7)
          Case No. 11-18798 (MBK)
          Adv. Pro. No. 11-02465 (MBK)

Counselors:

  This matter is before the Court upon the motion ("Motion") of Debtor-Defendant Nicholas Braco ("Debtor") for summary judgment on Count VI – Objection to Discharge Pursuant to 11 U.S.C. § 727 -- of the Chapter 7 Trustee's ("Trustee") Adversary Complaint. The Court has reviewed the pleadings submitted and entertained oral argument on March 12th and April 23rd, 2012. The Court issues the following ruling:

  **I.**  **Jurisdiction**

  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring

all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (J) and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Accordingly, the Court issues the following findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

**II.    Background**

On March 24, 2011 ("Petition Date"), Nicholas and Marcy Braco (collectively, the "Debtors") filed their voluntary Chapter 7 bankruptcy petition. On March 25, 2011, Barry Frost was appointed as the Trustee to the Debtors' case. On October 11, 2011, the Trustee, through Special Counsel, filed the within Adversary Complaint, which, *inter alia*, objects to the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) (Count VI). See Adv. Pro. Docket No. 1.

Count VI of the Adversary Complaint alleges that the Debtor purposefully and willfully executed a post-petition mortgage lien on certain real property owned by Midlantic Development, LLC ("Midlantic"). The Trustee further alleges that the mortgage lien was executed in favor of co-defendant Karen Silverman ("Silverman") in satisfaction of certain pre-petition loans by Silverman to the Debtor's businesses – Braco Land Design, Inc. ("BLD") and Midlantic -- in the approximate aggregate amount of $240,000.[1] The crux of the Trustee's claim is that the transfer by the Debtor of the property owned by Midlantic was tantamount to a transfer of assets of the Debtor's bankruptcy estate in light of the Debtor's alleged ownership interest in, close relationship with, and control over Midlantic and BLD. Alternatively, the Trustee argues that the Debtor was acting as Midlantic and BLD's alter ego and, therefore, should be denied a discharge.

---

[1] According to the Debtors' Schedule B, the Debtor is 100% owner of BLD and 50% owner of Midlantic. The Adversary Complaint alleges that Silverman loaned $200,000 to BLD and $40,000 to Midlantic.

On January 26, 2012, the Debtor filed the instant Motion seeking summary judgment on Count VI of the Adversary Complaint. See Adv. Pro. Docket No. 27. In support of the Motion, the Debtor argues that the transfer of Midlantic's assets does not constitute a transfer of the Debtor's property, particularly when such interest is a derivative interest. Additionally, the Debtor argues that the Trustee's alter ego theory cannot be sustained, as the Trustee has alleged no facts to support a claim that the Debtor somehow ignored the corporate status of Midlantic and BLD and treated the assets of those entities as his own.

### III.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex

---

[2] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in Guiliano v. Coy (In re Coy):

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, *6-7 (Bankr. D. Del. Aug. 22, 2011).

Corp., 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial. Celotex Corp., 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine issue" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f). Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not

4

"significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at 249.

IV. **Denial of Discharge Under 11 U.S.C. § 727**

A. **11 U.S.C. § 727(a)(2)**

To warrant denial of discharge under 11 U.S.C. § 727(a)(2), the proponent must prove by a preponderance of the evidence that the debtor: "(1) transferred or concealed property; (2) belonging to him; (3) within one year of the bankruptcy filing or after the petition was filed; and (4) with intent to hinder, delay, or defraud a creditor." Serio v. DiLoreto, 266 Fed.Appx. 140, 144 (3d Cir. 2008) (citing In re Dawley, 312 B.R. 765, 782 (Bankr. E.D. Pa. 2004)). As a debtor's actual intent may be difficult to glean, "actual fraudulent intent may be ascertained by circumstantial evidence or inferences drawn from a course of conduct." In re Dawley, 312 B.R. at 782.

In this case, the critical inquiry is whether the Debtor transferred property "belonging to him" as property of the Debtor's bankruptcy estate. Thus, it is incumbent upon the Trustee to prove by a preponderance of the evidence that the property owned by Midlantic is in fact property of the Debtor's bankruptcy estate. For the reasons that follow, the Trustee has not met his burden.

### B. Corporate Assets are Distinct From an Individual Debtor's Assets

The Trustee cites numerous cases in support of his position that a transfer of a related company's asset constitutes a transfer by an individual debtor.[3] The Court respectfully disagrees with the Trustee's position, as well as the Trustee's supporting case law. As a practical matter, an LLC and a corporation are completely separate legal entities with their own assets. Indeed, "New Jersey 'abide[s] by the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise.'" Local Union 825, Affiliated v. McRand Contr. Co., 2011 U.S. Dist. LEXIS 70674, *17-18 (D.N.J. June 30, 2011), citing Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc., 195 N.J. 457, 472, (2008) (citations omitted). Thus, the assets of Midlantic do not automatically become assets of the Debtor's bankruptcy estate simply by virtue of the Debtor's 50% ownership interest in Midlantic.[4]

It is axiomatic that the automatic stay under 11 U.S.C. § 362 does not extend protection to the specific assets of a corporation in which an individual debtor holds an interest, as the automatic stay applies only to a debtor. See Roberts v. We Love Country, 2005 U.S. Dist. LEXIS 18566, *2-3 (E.D. Pa. Aug. 29, 2005) ("Generally, the automatic stay provisions of 11 U.S.C. § 362(a) only apply to the bankrupt debtor defendant."). Thus, if the separate corporate assets are not deemed property of the estate under 11 U.S.C. § 541(a), entitled to the benefits of the automatic stay, it is incongruous to view those assets as debtor's property for purposes of 11

---

[3] The Trustee cites for this proposition the following cases: Hines v. Marchetti, 436 B.R. 159 (M.D. Ala. 2010); Eckard Brandes, Inc. v. Riley (In re Riley), 2004 WL 2370640 (Bankr. D. Haw. Apr. 20, 2004); Bennett v. Hollingsworth (In re Hollingsworth), 224 B.R. 822 (Bankr. M.D. Fla. 1998); Grant v. Benjamin (In re Benjamin), 210 B.R. 203 (Bankr. M.D. Fla. 1997); Ricnick's Fitness Ctr. v. Hicks (In re Hicks), 71 B.R. 508 (Bankr. D.N.H. 1987); and Shapiro v. Gherman (In re Gherman, 103 B.R. 326 (Bankr. S.D. Fla. 1989).

[4] The Court would so hold even if the Debtor were 100% owner of Midlantic.

U.S.C. § 727 actions.  Accordingly, the Debtor's granting of a mortgage on property owned by Midlantic cannot be said to implicate property of the Debtor's estate.

### C.  The Trustee's Alter Ego Theory Cannot be Sustained

As an alternative theory, the Trustee seeks to "pierce the corporate veil" by characterizing Midlantic as the Debtor's alter ego.  The District Court for the District of New Jersey has recently summarized the standards for piercing the corporate veil as follows:

> In the absence of extraordinary circumstances such as fraud or injustice, a court will not generally pierce the corporate veil. Lyon v. Barrett, 89 N.J. 294, 300, 445 A.2d 1153 (1982). In New Jersey, two elements must be demonstrated to justify piercing the corporate veil: (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." State Capital Title & Abstract Co. v. Pappas Business Servs., LLC, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (internal citations omitted). Various factors may be considered in making these determinations, including, inter alia, the failure to observe corporate formalities, gross undercapitalization, and the absence of corporate records. Id.

Nat'l Enters. v. Wong & Fleming, 2012 U.S. Dist. LEXIS 44891, 22-23 (D.N.J. Mar. 30, 2012).

The Trustee alleges the following factors in support of his alter ego theory: (i) Defendant Midlantic, Defendant Braco Land Design, and the Debtor all maintain an address of 23 Sutton Road, the Debtor's principal's primary residence; (ii) Debtor has completely disregarded the corporate formalities for his alleged businesses; (iii) Defendant Midlantic and Defendant Braco Land are insolvent and they own no other assets; (iv) Debtor disregarded his 50% partner, Michael Smyth, when he encumbered the Shohola Property without Smyth's approval; (v) Smyth did not authorize the Shohola Transfer; (vi) Debtor, as 100% owner of Defendant Braco Land, controlled the affairs of that entity; (vii) Defendant Braco Land never

owned any other properties, and it never had any partners or shareholders; and (viii) Debtor treated Defendant Midlantic and the Shohola Property as his personal assets. See Trustee's Memorandum in Further Opposition to Debtor's Summary Judgment Motion, Adv. Pro. Docket No. 37. While the Court notes that Debtor's alleged status as Midlantic's alter ego is the more appropriate legal theory in support of Count VI of the Trustee's Adversary Complaint, the Court finds that no rational and fair-minded fact finder could conclude that the evidence of record supports the Trustee's theory of the case.

Despite the Trustee's broad allegations, there is nothing in the record to suggest such unity of interest and ownership between the Debtor and Midlantic as to impute alter ego liability on the Debtor. Nor is there evidence that the Debtor somehow treated Midlantic as his personal "piggy bank" or controlled the company in such a manner as to require piercing of the corporate veil. Further, there are no "badges of fraud" to factor into the Court's analysis. To the contrary, the Debtor simply allowed a mortgage to be executed on assets owned by Midlantic, a completely separate legal entity. While the Debtor may have breached a fiduciary duty to his partner, Mr. Smyth, when he opted to execute a mortgage in favor of Silverman, the Court does not find that the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(2) under these facts and circumstances.

### V.   Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of the Debtor on Count VI of the Trustee's Adversary Complaint. The Debtor is directed to submit a form of order consistent with the Court's ruling.

Dated: May 24, 2012

_____
Honorable Michael B. Kaplan
United States Bankruptcy Judge